## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Justin Clark,<br>　　　Plaintiff, | ) <br> ) <br> ) |
| v. | ) 　　No. 1:23cv1210 (RDA/WEF) <br> ) |
| United States of America, *et al.*,<br>　　　Defendants. | ) <br> ) <br> ) |

### MEMORANDUM OPINION and ORDER

Justin Clark, a federal inmate proceeding *pro se*, brings claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et seq,* alleging the Defendants incorrectly diagnosed him and failed to correctly provide Plaintiff medical care and treatment for a cranial brain tumor between June 3, 2019 through September 15, 2019 while he was detained at the Federal Correction Center, Petersburg, Virginia (FCC-Petersburg"). Dkt. 1. He has also filed a motion requesting appointment of counsel. Because Plaintiff is a prisoner, his complaint must be screened, to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. *See* 28 U.S.C. § 1915A.[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

　　　(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

## I. Standard of Review

Pursuant to § 1915A, a court must dismiss claims based upon "'an indisputably meritless legal theory,'" or where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.* Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519, (1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976).

## II. Complaint

The complaint names the following defendants: the United States; John Doe #1, former Warden, FCC Petersburg, June 3, 2019 through December 18, 2019; John Doe #2, former Health

2

Services Administrator, FCC Petersburg, June 3, 2019 through December 18, 2019; Dr. Katherine Laybourn, Clinical Director, FCC Petersburg; Ericka Young, a doctor at FCC Petersburg; Luis Negron, a mid-level provider at FCC Petersburg; Cherie Smith, a Physician' Assistant at FCC Petersburg; and Ignatius Hall, a Physician' Assistant at FCC Petersburg. Dkt. 1 at 4-5. Plaintiff alleges that "[a]ll relevant events in this case took place between June 3, 2019 and December 18, 2019." *Id.* at 6.

Plaintiff alleges he went to the FCC Petersburg Medical Unit on June 3, 2019 after he awoke with a headache and vomited. He was seen by Defendant Smith, an x-ray was taken of his head, which revealed an "unknown growth." *Id.* Smith advised Plaintiff that she would request a CT-scan that had to be approved by the Utilization Review Committee, and placed Plaintiff on antibiotics for sinusitis. Defendants Laybourn and Young were either present or co-signed the treatment. *Id.*

Plaintiff went to sick call or checked on his CT-scan approval on 22 dates between June 7, 2019 and August 19, 2019. Plaintiff was suffering from headaches, dizziness, and vomiting during this period and his symptoms became more severe. He saw Defendants Smith, Young and Negron during this period. On June 28, 2019, Defendant Smith told him that he had vertigo, and has a cyst in his sinuses. On July 19, 2019, Defendants Smith and Young told Plaintiff he had "Meniere's Disease,"[2] and on July 22, 2019, Defendant Smith told him, "We've told you a thousand times, we can't do anything for you. You have Meniere's Disease, and I told you to STOP SHOWING UP [at sick call] unless you are sick. I will tell you when you are approved for the CT scan." On August

---

[2] "Meniere's disease is an inner ear problem that can cause dizzy spells, also called vertigo, and hearing loss. Most of the time, Meniere's disease affects only one ear." https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 (last viewed Mar. 4, 2024).

23, 2019, 81 days after he went to the Medical Unit on June 3, 2019, Plaintiff was told his CT-scan had been approved. *Id.* at 8-10.

Plaintiff's symptoms worsened and because of their severity he went to the Medical Unit on September 15, 2019 on two separate occasions. Sometime during the evening hours, he was transported to John Randolph Medical Center ("JRMC"), "where an emergency CT scan was performed which verified the 'growth' previously noted on Plaintiff's June 3, 2019 x-ray." *Id.* at 12. The doctors at JRMC described the tumor as a "'posterior fossa mass.'" *Id.*[3] Plaintiff was transferred to Johnston Willis Hospital on September 16, 2019 and had an MRI and CT scan that day, was evaluated on September 17, 2019, and they operated on September 18, 2019. *Id.* at 13.

Plaintiff stayed an unspecified period of time at the hospital, but was back at FCC Petersburg on November 27, 2019. On November 27, 2019, Defendant Laybourn requested that Plaintiff be referred "to Vibra Hospital" for "long [term] hospitalization for brain tumor surgery" because FCC Petersburg was not able "to accommodate [Plaintiff] in General Population," and FCC Petersburg did not "have an infirmary." *Id.* at 14. On December 18, 2019, Plaintiff was transferred to the "Federal Medical Center Lexington by plane." *Id.*

Plaintiff alleges that due to the delay in treatment he "now suffers from chronic throbbing headaches, is wheelchair bound due to severe dizziness and vertigo, has constant ringing in his ears, moderate short and long term memory loss, as well as being forced to sleep at a 45 degree angle with a special wedge pillow to elevate his upper body and head." *Id.* at 19.

---

[3] "The posterior fossa is a small space in the skull, found near the brainstem and cerebellum. The cerebellum is the part of the brain responsible for balance and coordinated movements. The brainstem is responsible for controlling vital body functions, such as breathing. If a tumor grows in the area of the posterior fossa, it can block the flow of spinal fluid and cause increased pressure on the brain and spinal cord." https://www.mountsinai.org/health-library/diseases-conditions/posterior-fossa-tumor (last viewed Mar. 4, 2024).

### III. Discussion

*A. Doe Defendants*

To state a cause of action under *Bivens*, a plaintiff must allege facts indicating that he was *deprived of rights guaranteed by the Constitution or laws of the United States* and that the alleged deprivation resulted from conduct committed by agents acting under color of federal law. *Bivens*, 403 U.S. at 389; *see West v. Atkins*, 487 U.S. 42, 48 (1988). To prove that a defendant acted under color of federal law, "the person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009).[4] Each named defendant in a § 1983 complaint must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010).

Here, there are no allegations that either John Doe defendant was involved in providing treatment to Plaintiff or in the decisions regarding his treatment. An official is not liable simply because they were in a supervisory position. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("common to all § 1983 and *Bivens* claims is the requirement that liability be predicated on a violation traceable to a defendant-official's 'own individual actions'" and "'[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

---

[4] *Bivens* and § 1983 actions are reviewed "under the same legal principles, except for the requirement of federal action under *Bivens* and state action under § 1983." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (*Bivens* created "a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials" and "courts generally apply § 1983 law to *Bivens* cases") (quoting *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir.1980), and citing *Butz v. Economou*, 438 U.S. 478, 500 (1978)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (discussing *Bivens* and § 1983 and finding that "the qualified immunity analysis is identical under either cause of action"). *See, e.g., Truett v. Shaw*, 17 F. App'x 123, 124 (4th Cir. 2001) (per curiam) (applying "§ 1997e(a) in the same manner to both § 1983 actions and *Bivens* actions."); *Plowman v. United States Dep't of Army*, 698 F. Supp. 627, 632 n. 18 (E.D. Va. 1988) (construing claims brought under § 1983 as *Bivens* claims, without dismissal for failure to state a claim).

of respondeat superior.'") (quoting *Iqbal*, 556 U.S. at 676). Consequently, both John Does will be dismissed.

### B. Statute of Limitations

In order to dismiss under § 1915A because the statute of limitations has expired, the Court must find that the expiration of the statute of limitations is clear on the face of the complaint. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955-56 (4th Cir. ) (affirming the district court's dismissal the complaint as "frivolous under 28 U.S.C. § 1915(d)" because it was not timely filed after the claims accrued"); *see, e.g., Todd v. Baskerville*, 712 F.2d 70, 74 (4th Cir. 1983) (affirming district court's dismissal under § 1915(d) of actions that appeared on their face to be barred by statute of limitations). Plaintiff's claim accrued when he "possesse[d] sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955.

There are several statute of limitations involved in this action. The FTCA imposes a two statutes of limitations. Pursuant to 28 U.S.C. § 2401(b), the aggrieved party must present an administrative claim to the appropriate federal agency within two years of the claim's accrual, and then file suit in federal court "within six months" from the agency's decision on the claim. *United States v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015). The statute of limitations for a *Bivens* action is borrowed from the two-year personal injury statute of limitation contained in Virginia Code § 8.01-243(A). *See Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983); *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 860 n.27 (E.D. Va. 2016) (noting that the statute of limitations for *Bivens* actions is the personal injury statute of limitations for the forum in which the claim arises, and in Virginia, that statutory limit is two years) (citing Va. Code Ann. § 8.01-243(A)). The statute of limitations on claims brought in federal court in Virginia for claims under the RA are the same as the one-year statute of limitations set forth in the Virginians with Disabilities Act. *Wolsky v.*

6

*Med. Coll. of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993); *see* Va. Code § 51.5-46 ("An action may be commenced pursuant to this section any time within one year of the occurrence of any violation of rights under this chapter."). For a claim under the ADA, the applicable statute of limitations is the one-year statute of limitations in the Virginia Rights of Persons with Disabilities Act, which applies to ADA claims based on events that occurred in Virginia. *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347-48 (4th Cir. 2011).

Here, the complaint was executed on April 24, 2023, but it was not postmarked until August 30, 2023, and was not filed until September 6, 2023. Dkt. Nos. 1 at 21; 1-3. The return address on the envelope is not Plaintiff's and therefore he did not send it via the prison mail system. *See Wilder v. Chairman of the Cent. Classification Bd.*, 926 F.2d 367, 370 (4th Cir. 1991) (finding *Houston v. Lack*, 487 U.S. 266, 276 (1988) filing rule does not apply when a prisoner gives papers to a person other than the prison authorities); *see also Dison v. Whitley*, 20 F.3d 185, 187 (5th Cir. 1994) (holding *Houston* exception is limited to filings with prison officials, over whom a prisoner has no control); see, e.g., *Lewis v. Clarke*, No. 1:20cv282 (CMH/JFA), 2020 WL 6139946, at \*4, n.4 (E.D. Va. Oct. 19, 2020), *appeal dismissed*, 853 F. App'x 914 (4th Cir. 2021).

Plaintiff's cause of action accrued no later than November 27, 2019, when he was back at FCC Petersburg after his surgery on September 18, 2019 and was aware of all the facts he has alleged in support of his claims. The complaint, however, was not filed until nearly four years later on September 6, 2023, almost two years past the longest statute of limitations that applies to his various theories of liability. All of the various claims Plaintiff has raised are, on the basis of the record, barred by the applicable statute of limitations.

Because Plaintiff is a prisoner, proceeding *pro se*, he will be allowed leave to amend his complaint to cure the deficiencies noted to state a claim upon which relief can be granted.

*C. Appointment of Counsel*

Regarding appointment of counsel, "[a] pro se prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017) (citation omitted). Further, this Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and, to qualify, an indigent claimant must present "exceptional circumstances." *See id.* Exceptional circumstances exist where a "*pro se* litigant has a colorable claim but lacks the capacity to present it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Here, at present, the claims in the complaint do not state a claim upon which relief can be granted.

Accordingly, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis*, Dkt. No. 2 is **DENIED as MOOT**, and it is

**FURTHER ORDERED** that his motion for appointment of counsel [Dkt. No. 3] is **DENIED WITHOUT PREJUDICE;** and it is

**FURTHER ORDERED that** John Doe #1 and John Doe #2 are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted; and it is

FURTHER ORDERED that that plaintiff particularize and amend his complaint in an amended complaint within thirty (30) days of the date of this Order (he may use the enclosed standardized complaint form) by (i) naming every person he wishes to include as a defendant along with the conduct of that person that violated plaintiff's rights, (ii) identify each claim he seeks to raise by letter or number, (iii) submitting a short, detailed statement of background facts which describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought, (iv) and

curing the deficiencies noted herein including the untimely filing of the current complaint. Plaintiff must reallege all the facts from his original complaint in his amended complaint and he must include his civil action number, **No. 1:23cv1210 (RDA/WEF)**, on the first page of his amended complaint. Plaintiff is advised that his amended complaint will serve as the sole complaint in this civil action; and it is

**FURTHER ORDERED** that plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send to plaintiff a copy of this Order to Plaintiff, and the attached form.

Entered this ____8____ day of ____March____ 2024.

Alexandria, Virginia

/s/
_____
Rossie D. Alston, Jr.
United States District Judge